**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Elizabeth M.,[1]

        Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security*,

        Defendant.

Case No. 25-cv-2550 (DJF)

**ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Elizabth M. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") ("Decision"). Plaintiff asks the Court to reverse the Decision and remand this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff claims the ALJ erred in accepting the vocational expert's testimony regarding representative jobs Plaintiff is able to perform. The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 17.) This matter is before the Court on the parties' briefs. For the reasons given below, the Court affirms the Decision in part and affirms the ALJ's final determination that Plaintiff is not disabled. The Court accordingly denies Plaintiff's request, grants the Commissioner's request and dismisses this action.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in court filings in Social Security matters.

1

**BACKGROUND**

I.    **Plaintiff's Claim**

Plaintiff applied for DIB on January 3, 2023 (*see* Soc. Sec. Admin. R. ("R.") 294).[2]  At that time, she was 37 years old (*id.*).  She had two years of college education (R. 325) and previous work experience as a bank customer service representative (R. 155, 325).  Plaintiff alleged a disability onset date of January 5, 2022 (R. 294), resulting from various conditions, including: "chronic pain syndrome [p]ain in unspecified joint", "possible Multiple Sclerosis", bipolar disorder, and depression (R. 324).

II.    **Regulatory Background**

An individual is considered disabled for purposes of DIB if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

---

[2] The Social Security administrative record ("R.") is filed at ECF No. 6.  For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

2

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled.  20 C.F.R. § 404.1520(a)(4).  At step one, the claimant must establish that she is not engaged in any "substantial gainful activity."   20 C.F.R. § 404.1520(a)(4)(i).  The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  20 C.F.R. § 404.1520(a)(4)(iii).[3]  If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v).

### III.    Procedural History

The Commissioner denied Plaintiff's application for DIB initially (R. 200) and on reconsideration (R. 211).  On March 12, 2024, at Plaintiff's request (R. 218), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 143-170).  An attorney represented

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R. Part 404, Subpart P, App. 1.

Plaintiff during the hearing, and Plaintiff and Vocational Expert ("VE") Pamela Nelligan testified. (*Id.*)  The ALJ issued his Decision on May 14, 2024.  (R. 15-29.)

At step one of the sequential analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 5, 2022, her alleged disability onset date.  (R. 20.)  At step two, the ALJ found Plaintiff had the following severe impairments: fibromyalgia; obesity; thoracic degenerative disc disease; empty sella syndrome; anxiety; bipolar affect, depressed type; post-traumatic stress disorder; and attention deficit hyperactivity disorder.  (R. 21.)  The ALJ also found Plaintiff had mild degenerative disc disease of the cervical spine and tremors, but these impairments were not severe.  (*Id.*)  The ALJ noted Plaintiff had reported possible multiple sclerosis, but neurology visits ruled out this condition and attributed her symptoms to fibromyalgia. (*Id.*)  Plaintiff also reported urinary incontinence, but because she had received no medical diagnosis or treatment for this condition, the ALJ found it was not a medically determinable impairment.  (*Id.*)  At step three, the ALJ concluded that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing.  (R. 21-23.)

The ALJ then determined Plaintiff's RFC.  He found that:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [she] can occasionally climb ramps and stairs.  She can never climb ladders, ropes, and scaffolds.  [She] can occasionally balance, stoop, kneel, and crouch.  She can never crawl.  [She] can have no exposure to vibration.  She can tolerate work with no more than a moderate noise level as that term is defined by the selected characteristics of occupations.  [She] can have no exposure to unprotected heights and moving mechanical parts.  In addition, she can carry out detailed but not complex instructions.  [She] can occasionally interact with supervisors, coworkers and the public. She requires the use of a four-point cane for ambulation.

(R. 23.)

In reaching this determination, the ALJ reviewed the record in detail, taking into consideration the medical opinions and prior administrative medical findings in the record,

Plaintiff's medical testing, examination and treatment history, Plaintiff's testimony regarding her symptoms, her employment history, and her activities of daily living. (R. 23-27.)

After determining Plaintiff's RFC, the ALJ found at step four of the sequential analysis that Plaintiff had past relevant work as a customer service representative, which was light work (sedentary as performed) at SVP 6[4]; a billings clerk, which was sedentary work (medium as performed) at SVP 4; and a customer service clerk, which was sedentary work (light as performed) at SVP 5. (R. 27.) The ALJ then determined that Plaintiff cannot perform her past relevant work, either as actually performed or as generally performed. (*Id.* at 27-28.)

Relying on VE Nelligan's testimony, the ALJ then found at step five that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: sorter (DOT# 209.687-022), with 40,000 jobs in the national economy; document preparer (DOT# 249.587-018), with 15,000 jobs in the national economy; and appointment clerk (DOT# 237.367-010), with 140,000 jobs in the national economy. (R. 28-29.) Based on these findings, the ALJ concluded Plaintiff was not disabled, and issued his Decision denying DIB on May 14, 2024. (*Id.* at 29.)

Plaintiff appealed the ALJ's Decision on June 18, 2024 (R. 8-11). Plaintiff submitted additional evidence on appeal, but the Appeals Council found the additional evidence did not show a reasonable probability that it would change the outcome of the Decision. (R. 2.) Further finding Plaintiff's arguments did not provide a basis for changing the ALJ's Decision, the Appeals Council denied Plaintiff's request for review. (R. 1-4.) Having exhausted the administrative appeals

---

[4] "SVP" refers to the "specific vocational preparation" for a given occupation. Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the Dictionary of Occupational Titles ("DOT"). Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

process, Plaintiff filed this lawsuit on June 18, 2025.  (ECF No. 1.)  Plaintiff challenges the ALJ's

reliance on Ms. Nelligan's testimony at step five of the sequential analysis.  (*See* ECF No. 13.)

Plaintiff specifically contends that the ALJ failed to properly identify, resolve, and provide a

reasonable explanation for resolving apparent conflicts between the DOT and the VE's testimony

before he relied on that testimony.  (*Id*. at 1.)

## DISCUSSION

### I.    Standard of Review

The Court's review of the ALJ's Decision is limited to determining whether the Decision

is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860,

863 (8th Cir. 2000).  "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*,

587 U.S. 97, 103 (2019) (citation modified).  It is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938)).  This "threshold … is not high." *Id.*  "If, after reviewing the record, the

court finds it is possible to draw two inconsistent positions from the evidence and one of those

positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v.

Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains factual findings that

"considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that

substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d

818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005)

(remanding because the ALJ's factual findings were insufficient for meaningful appellate review).

"[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence

in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989

6

(BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

As relevant to this matter, when there is a conflict between a VE's testimony and the DOT, the ALJ has an affirmative duty to: (1.) resolve the conflict before relying on the VE evidence; and (2.) "explain the resolution of the conflict irrespective of how the conflict was identified."  SSR 00-4P, 2000 WL 1898704, at *2-4 (Dec. 4, 2000); *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014).[5]  Remand is also appropriate when a VE's testimony is self-contradictory, with directions on remand to resolve the apparent conflict.  *See, e.g., Jennifer W. v. Bisignano*, No. 24-cv-4127 (DJF), 2025 WL 3186944, at *14-15 (D. Minn. Nov. 14, 2025); *Saimalo T. v. O'Malley*, No. 2:24-cv-1241 (MDC), 2025 WL 2073970, at *6 (D. Nev. July 22, 2025) ("Where a VE's testimony appears to be self-contradictory, remand is appropriate."); *Diane B. v. Kijakazi*, No. 21-cv-794 (TSH), 2022 WL 94915, at *16 (N.D. Cal. Jan. 10, 2022) (citing *Hamilton v. Comm'r of Soc. Sec. Admin.*, 464 F. App'x 681, 682 (9th Cir. 2012)).

## II.   Analysis

Plaintiff argues the ALJ failed to appropriately identify and resolve conflicts between Ms. Nelligan's testimony and the DOT with respect to each of the three occupations she identified as jobs Plaintiff could perform: document preparer, appointment clerk, and sorter.  Respondent contends the ALJ's reliance on Ms. Nelligan's testimony was appropriate, either because she

---

[5] The Social Security Administration rescinded SSR 00-4p on December 6, 2024, explaining that though the Administration will continue to rely on the DOT as a valid and reliable source of information, ALJs are no longer required to identify and resolve conflicts between occupational information provided by VEs and information in the DOT.  SSR 24-3P, 2024 WL 5256890, at *2 (Dec. 6, 2024).  As Defendant acknowledges, however, SSR 00-4p still applies in this case because it was not rescinded until after the ALJ issued the Decision on May 14, 2024 (ECF No. 17 at 8 n.2).  *See* SSR 24-3P, 2024 WL at *2 n.1.

resolved any conflict between her testimony and the DOT, or because Plaintiff has failed to identify an apparent conflict in need of resolution.

### A.    Document Preparer

Plaintiff argues that the job of "document preparer" as listed in the DOT (DOT# 249.587-018) is now obsolete.  Plaintiff points to guidance from the Social Security Administration to support her argument.  (ECF No. 13 at 5, citing R. 34-37); *see also* EM-24027 REV, Social Security Administration, *Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process* (Jan. 6, 2025) ("Guidance").[6]  This Guidance establishes heightened evidentiary and articulation requirements for certain occupations, including "document preparer" because the descriptions of the occupations in the DOT "may refer to job materials or processes that have been replaced by more modern materials or processes."  *Id*.  Under this Guidance, an ALJ may not cite the job of "document preparer" to support a determination that a claimant is not disabled without additional evidence from a VE showing that, as the occupation is currently performed: (1.) "its requirements are consistent with the individual's RFC"; and (2.) "it exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant."  *Id*.

During Plaintiff's hearing, the ALJ asked Ms. Nelligen if the jobs she had identified as jobs Plaintiff could perform were consistent with the descriptions of those jobs in the DOT and the SCO.[7]  (R. 164.)  In response, Ms. Nelligen clarified that the job of document preparer is different.  (*Id*.)  She stated:

---

[6] *Available at* https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last visited March 3, 2026).

[7] The Selected Characteristics of Occupations ("SCO") is a companion volume to the DOT published by the Department of Labor.  Social Security Ruling SSR 00-4P requires ALJs to resolve

> [T]he job of the Document Preparer does utilize more updated technology in the current labor market in how it's performed. The DOT refers to utilizing microfiche. However, there are some positions that still utilize that type of technology, more jobs in the current labor market as to how it's performed utilizing scanner.…My response to those types of questions or issues which are not directly addressed by the DOT or the SCO is based on my professional experience and training, and also my experience in placing people into jobs and observation of jobs.

(R. 164-65.)  The ALJ cited this testimony in his Decision and found Ms. Nelligan's explanation of how the "document preparer" job is currently performed to be reasonable.  (R. 28-29, "The vocational expert also testified the document preparer job utilizes more current technology in the current labor market.  Some position[s] still use microfiche, but more jobs utilize scanners. The vocational expert's explanation for this supplementation of the Dictionary of Occupational Titles is found to be reasonable, and the vocational expert's testimony is therefore accepted.".)  Having accepted Ms. Nelligan's testimony regarding the nature of the position as it is currently performed, the ALJ concluded that a person with Plaintiff's RFC could perform the position of "document preparer" as described.  (R. 28-29.)  The ALJ thus solicited testimony from the VE regarding the conflict between the DOT and her testimony regarding the document preparer position and addressed that conflict as SSR 00-4P requires.  The Court cannot conclude that the ALJ abused his discretion in determining that a person with Plaintiff's RFC is capable of using a document scanner, and Plaintiff identifies no skill or ability required for the position that Plaintiff lacks.

Plaintiff nevertheless challenges the ALJ's conclusions based on a couple of unsupported assumptions.  First, Plaintiff contends Ms. Nelligan must have either confused or merged the job of "document preparer", which is unskilled, with the job identified in the DOT as "microfilm camera operator", which is semi-skilled, because a "document preparer" as described in the DOT

---

any conflicts between a VE's testimony and the SCO in conjunction with the resolution of conflicts with the DOT.  SSR 00-4P, 2000 WL 1898704, at *1 (Dec. 4, 2000).

"did not generate or capture the images" of the documents at issue.  (ECF No. 13 at 5-6.)  But that statement is incorrect.  The DOT describes a "document preparer" as someone who "[p]repares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, *photocopying machine*, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife.  *Reproduces document pages* as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, *using photocopying machine*."  *Dictionary of Occupational Titles* 249.587-018, Document Preparer, Microfilming, 1991 WL 672349 (4th ed. rev. 1991) (emphasis added).  The DOT's description of a "document preparer" thus necessarily contemplates generating images of documents on a photocopy machine.  Plaintiff fails to explain how using a scanner to capture images requires more skill or is otherwise materially different from using a photocopier to do so.

Second, Plaintiff contends Ms. Nelligan's estimate of 15,000 available document preparer positions in the national economy was flawed because she relied on information from Job Browser Pro, which estimates 15,661 positions exist, but defines the job using the DOT's obsolete job description rather than updating the numbers to reflect job duties as currently performed.  (ECF No. 13 at 6-7.)  This contention mischaracterizes Ms. Nelligan's testimony, during which she stated that in approximating job numbers she relied on her "professional experience and training with regards to the jobs that are currently performed in the current labor market, and then also the data and statistics from the Bureau of Labor Statistics, also the statistics in ORS, and also the information in Job Browser Pro."  (R. 165-66.)  Ms. Nelligan thus did not testify that she relied *solely* on information derived from Job Browser Pro.  Moreover, even if she had, Plaintiff's argument amounts to a challenge to the accuracy of the information contained in Job Browser Pro,

10

but Plaintiff proffers no counterevidence showing Job Browser Pro's estimate is in any way incorrect. Plaintiff simply assumes, without evidence, that a change in the technology used by document preparers necessarily means the number of these positions available in the national economy also must have changed. Because Plaintiff fails to establish any reasonable basis to conclude Ms. Nelligan's job estimate is inaccurate, the ALJ did not err in accepting it. The Court affirms the ALJ's Decision with respect to the document preparer position for these reasons.

### B. Appointment Clerk

Plaintiff challenges the ALJ's conclusion that she can perform the job of "appointment clerk" (DOT# 237.367-010) on the ground that this position requires interaction with supervisors, coworkers and the public exceeding the limitations in her RFC. (ECF No. 13 at 7-8.) The DOT describes an "appointment clerk" as someone who "[s]chedules appointments with employer or other employees for clients or customers by mail, phone, or in person, and records time and date of appointment in appointment book. Indicates in appointment book when appointments have been filled or cancelled. May telephone or write clients to remind them of appointments. May receive payments for services, and record them in ledger. May receive callers …. May operate switchboard …." *Dictionary of Occupational Titles* 237.367-010, Appointment Clerk, 1991 WL 672185 (4th ed. rev. 1991). Plaintiff notes that her RFC, as determined by the ALJ, limits her to "occasional" interaction with supervisors, co-workers, and the public. (ECF No. 13 at 7, citing R. 23.) The Social Security Administration defines "occasionally" to mean "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Plaintiff argues the job of "appointment clerk" conflicts with her restriction to "occasional" interactions with others because it requires "frequent talking and frequent hearing, with frequent meaning up to 66% of the workday." (ECF No. 13 at 7, citing R. 120.)

11

Defendant does not dispute Plaintiff's assertion that the DOT definition of "appointment clerk" describes frequent interactions with others.  (*See* ECF No. 17 at 12, "[T]he maximum amount of speaking and hearing performed in the occupation is described as frequent.")  Defendant argues, however, that DOT definitions are simply "generic job descriptions" that offer the "approximate maximum requirements for each position, rather than their range."  (ECF No. 17 at 11-12, citing *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007).)  As Defendant points out (ECF No. 17 at 12), the Social Security Administration defines "frequent" as "occurring from one-third to two-thirds of the time."  SSR 83-10, 1983 WL at *6.  Defendant asserts that, "[b]ecause occasional is defined as 'exists up to 1/3 of the time,' there is potential overlap at precisely 1/3 of the time."  (ECF No. 17 at 12.)  Defendant therefore concludes Ms. Nelligan's testimony that a person with Plaintiff's RFC could perform the appointment clerk job was consistent with the DOT.

This argument is unpersuasive.  That Plaintiff might be able to perform whatever appointment clerk jobs may exist at the very lowest end of the range does not afford confidence, based on Ms. Nelligan's estimate, that there are 140,000 such jobs in the national economy that Plaintiff can perform.  *C.f. Page*, 484 F.3d at 1045 (citing *Smith v. Shalala*, 46 F.3d 45 (8th Cir. 1995), finding conflict between RFC limited to lifting no more than 20 pounds and "jobs requiring the ability to lift 20 to 50 pounds occasionally," notwithstanding overlap at 20 pounds).  The ALJ found that Plaintiff could interact with supervisors, coworkers and the public only "occasionally" due to moderate social functioning and "mood symptoms" including anxious mood and panic attacks.  (R. 23, 26.)  That limitation plainly conflicts with any job that requires "frequent" interaction with others, such as frequently talking with clients or customers to schedule appointments.  Because there is an apparent conflict between Ms. Nelligan's testimony and the DOT, the ALJ had an affirmative duty to resolve the conflict.  The ALJ failed to do so, and

therefore, the Court finds the ALJ's reliance on Ms. Nelligan's testimony with respect to the Appointment Clerk job was erroneous.

### C.    Sorter

Plaintiff further challenges the ALJ's conclusion that she can perform the job of "sorter" (DOT# 209.687-022).  The DOT defines a "sorter" as a person who "[s]orts data, such as forms, correspondence, checks, receipts, bills, and sales tickets, into specified sequence or grouping, such as by address, code, quantity, and class, for such purposes as filing, mailing, copying, or preparing records.  May be designated according to work performed as Bill Sorter (clerical); Sales-Slip Sorter (clerical)." *Dictionary of Occupational Titles* 209.687-022, Sorter, 1991 WL 671812 (4th ed. rev. 1991).  Plaintiff argues she could not do the job of "sorter" because the DOT categorizes it as a semi-skilled job with an SVP level of 3, which exceeded her capabilities.  (ECF No. 13 at 8.) Plaintiff notes that the ALJ found transferability of skills from her past relevant work in jobs rated SVP 4, 5 and 6 was "not material" to his analysis.  (*See id.* at 8-9, citing R. 28.)  She contends that because the ALJ did not find her to have any transferrable job skills, he should have limited her to jobs classified in the DOT as unskilled, with an SVP level of 1 or 2.  (*Id.*)

Though Plaintiff points to an apparent conflict between Ms. Nelligan's testimony and the DOT, her argument fails because Ms. Nelligan adequately addressed and resolved that conflict during her testimony, stating:

> The hypothetical individual would be capable of performing work as a Sorter, 209.687-022, sedentary, semi-skilled, SVP: 3.  *However, this job could be learned in under 30 days based on this consultant's experience in placing people in jobs*. But there would be approximately 40,000 positions nationally.

(R. 163.)  The Social Security Administration defines "skilled" and "semi-skilled" work above the unskilled level as jobs requiring more than 30 days to learn.  SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000); SSR 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982).  In testifying that the sorter job

can be learned in less than 30 days, Ms. Nelligan proffered her expertise and experience with placing people in these jobs as a basis for concluding that Plaintiff can perform this job without transferrable job skills. In other words, based on her expertise and experience, Ms. Nelligan classified the sorter position as unskilled.

Plaintiff argues Ms. Nelligan's explanation for contradicting the DOT was insufficient because she did not testify that she had placed people in that job with Plaintiff's particular set of limitations. (ECF No. 13 at 9.) But Plaintiff points to no limitation in Plaintiff's RFC that arguably prevents her from doing this work. Moreover, Ms. Nelligan testified that she assumed all the limitations and abilities set forth in the ALJ's hypothetical in concluding that Plaintiff can perform the job of "sorter". (R. 162-63, R. 165.) There was no requirement that the VE must testify to specific examples of placing other individuals with Plaintiff's precise RFC in the same job.

Plaintiff also challenges Ms. Nelligan's testimony by citing various sources of data other than the DOT (*see* ECF No. 13 at 9-10), but Plaintiff cites no authority for the proposition that the ALJ was required to resolve conflicts between Ms. Nelligan's testimony and those other sources. The ALJ's reliance on Ms. Nelligan's testimony was not misplaced, and indeed, the DOT expressly encourages ALJs to rely on consultant expertise in resolving questions about how much training a particular job actually requires. *See* SSR 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982) ("It may not be self-evident that [certain] jobs can be learned in 30 days or less … In these cases, occupational reference materials or specialists should be consulted. (State agencies may use vocational consultants, specialists or vocational evaluation workshops to assist in resolving complex vocational issues; and vocational experts may be consulted for this purpose at the hearing and appeals levels…)").

14

Finally, Plaintiff attempts to characterize Ms. Nelligan's testimony as internally contradictory by pointing out that, while Job Browser Pro classifies the sorter job as "semi-skilled", Ms. Nelligan testified she was "not aware of" conflicts between her testimony and Job Browser Pro information.  (*See* ECF No. 13 at 9-10, citing R. 168.)  In asserting this argument, Plaintiff reads too much into Ms. Nelligan's non-committal statement.  Plaintiff's counsel did not specifically question Ms. Nelligan about the "semi-skilled" classification of sorters in Job Browser Pro, and Ms. Nelligan's statement that she was "not aware" of anything conflicting as to Job Browser Pro generally is not a definitive representation that no such conflicts existed.[8]

The Court concludes that the conflict between Ms. Nelligan's testimony and the DOT as to whether the sorter job is "unskilled" or "semi-skilled" was adequately resolved and that the ALJ's acceptance of her explanation was reasonable.  Therefore, the ALJ did not err in relying on her testimony with respect to the "sorter" position.

### D.       Number of Jobs in the National Economy

For the foregoing reasons, the Court affirms the ALJ's findings with respect to the jobs of "document preparer" and "sorter" but rejects the ALJ's finding with respect to the "appointment clerk" position.  Based on these findings, the Court must assess whether the ALJ identified a sufficient number of jobs in the national economy that Plaintiff can perform to conclude she is not disabled.  Ms. Nelligan estimated that there are 40,000 "sorter" jobs in the national economy and 15,000 "document preparer" jobs.  The Court finds no reasonable basis to question her estimates with respect to these positions.  Therefore, the record reflects a total of 55,000 representative jobs

---

[8] Counsel's question to Ms. Nelligan was confusing at best: "Nothing about your testimony that the jobs you have described today would be contradicted by any of the information Job Browser Pro reports with?"  (R. 168.)  It is difficult to discern from this question exactly what testimony or information the question seeks to compare.  Her response, "Not that I am aware of" (*id.*), reflects this lack of clarity.

in the national economy that Plaintiff is able to perform.  Though there is no bright line rule, this total exceeds the number of jobs the Court has previously found sufficient to establish a significant number jobs in the national economy at step five of the sequential analysis.  *See, e.g.*, *Shari B. v. Kijakazi*, Case No. 22-cv-1539 (DJF), 2023 WL 6130679, *7-9 (D. Minn. Sept. 19, 2023) (surveying cases and concluding that many courts draw the line between "significant" and "insignificant" at around 20,000 jobs in the national economy); *see also Tanya S. v. O'Malley*, No. 23-cv-1416 (ECW), 2024 WL 3858155, at *12 (D. Minn. Aug. 19, 2024) (quoting *Shari B.*, 2023 WL at *8, and finding 22,000 jobs significant); *Nicolas C. J. v. Kijakazi*, 20-cv-1340 (WMW/ECW), 2022 WL 1109810, at *25 (D. Minn. Jan. 20, 2022) (finding 20,500 jobs nationally to be significant), *report and recommendation adopted*, 2022 WL 807605 (D. Minn. Mar. 17, 2022).

The Court therefore finds the number of representative jobs in the national economy Plaintiff is able to perform is significant.  Based on that finding, the Court concludes the ALJ did not err in determining that Plaintiff is not disabled and that his determination is supported by substantial evidence in the record as a whole.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.    The Decision is **AFFIRMED IN PART**;

2.    Plaintiff's Request for Relief (ECF No. 13) is **DENIED**;

3.    The Commissioner's Request for Relief (ECF No. 17) is **GRANTED**; and

4.    This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 11, 2026

*s/ Dulce J. Foster*

Dulce J. Foster
United States Magistrate Judge